UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT

| | |
|---|---|
| Antoinette C. Taylor, an individual )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>)<br>Holiday Inns Incorporated d/b/a )<br>InterContinental Hotels Group acts as delegator; )<br>Jaydev Nilmani Dholakia d/b/a )<br>Dhol Enterprises, LLC, individually and in his )<br>Capacity as General Manager and delegatee, )<br>inclusive, )<br>)<br>)<br>Defendants. )<br>_____ ) | CASE NO. 3:13cv-00010-GFVT<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Eastern District of Kentucky**<br>**F I L E D**<br><br>**MAY 2 0 2013**<br><br>AT FRANKFORT<br>ROBERT R. CARR<br>CLERK U.S. DISTRICT COURT |

\*  \*  \*  \*  \*  \*  \*  \*  \*

Pursuant to Federal Rules of Civil Procedure ("FRCP") 15(a)(c)(2),

Plaintiff Antoinette C. Taylor ("Plaintiff" or "Taylor"), *pro se*, respectfully seeks permission to

amend her original complaint, which was filed on March 6, 2013 and Defendants Holiday Inns

Incorporated d/b/a InterContinental Hotels Group ("Holiday Inns") and Jaydev Nilmani Dholakia

d/b/a Dhol Enterprises, LLC ("Dholakia") has not yet filed its Answer state as follows:

1.      The amended complaint will attach Plaintiff's Affidavit. A copy of Plaintiff's

Affidavit is attached hereto and labeled Exhibit "1."

2.      In sections Parties ¶ 3 and Jurisdiction ¶ 7, the amended complaint will remove

the Kentucky Civil Rights Act of Kentucky Revised Statues Chapter 344 et seq.,

Kentucky Civil Rights Act of 1966, Title 42 of the United States Code ("U.S.C.") § 2000 et seq.,

and Title VII of the Civil Rights Act of 1964, as amended.

     3.    The amended complaint will add violations for Title 42 U.S.C. § 1981(a)(b)(c),

Title 42 U.S.C. § 1981(a)(b)(1), which provides that "all persons" shall have the same right as

"White persons" to "make and enforce contracts", (See Kolstad v. American Dental Ass'n, 527

U.S. 526, 144 L. Ed.2d 494, 119 S.Ct. 2118 (1999), and Stallworth v. Shuler, 777 F.2d 1431

(11th Cir. 1985)), Federal Tort Claims Act ("FTCA") of 1946, and other applicable federal laws

(See Kawananakoa v. Polybank, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834 (1907)), Title 42

U.S.C. § 1981(a)(3), the Civil Rights Act of 1866 (See United States v. City of Chicago, 853

F.2d 572, 575 (7th Cir. 1988)), the Civil Rights Restoration Act of 1988, Title 18 U.S.C. § 242,

Third, Fourth, and Ninth Amendments (See Griswold v. Connecticut, 381 U.S. 479 (1965), West

Coast Hotel v. Parrish (1937), Eisenstadt v. Parrish (1937), Roe v. Wade (1973)), Title 42 U.S.C.

§§ 12203, 12117, 12133, and 12188, the Restatement of Agency ("ROA") § 219,  ROA (Second)

§ 219(1) (1957), ROA (Third) Liability of Principle of Third Persons § 219 (2000), the

Restatement of Torts See Parker et al. v. Dominos Pizza et al., No. 92-2056 and 92-2630 (Fl.

App. Ct. 1993), Crinkly v. Holiday Inns, et al., No. 87-1547 (4th Cir. 1988), Greil v. Travelodge

Int'l., Inc., and LaSalle Ohio Enter., Inc., 541 N.E. 2d 1288 (Ill. App. Ct. 1989), and Martin v.

McDonald's Corp., 572 N.E. 2d 1073 (Ill. App. 1st Dist. 1991)), the Federal Trade Commission

("FTC" or "the Commission") § 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 56(a)(1), §§ 5(a)(1), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C. §§

45(a)(1), 45(m)(1)(A), 53(b), 56(a), and 57(b), to secure civil penalties, permanent injunctive

relief, consumer redress, and other equitable relief for the defendants' deceptive acts and

discriminatory practices in violation of § 5 of the FTC Act, 15 U.S.C. § 45(a), the FTC's Trade

Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and

Business Opportunity Ventures" ("the Franchise Rule") 2007(a) pp. 15544-15575 (See FTC v.

Minuteman Press, supra, a franchisor's conduct was a concurrent violation of both the Franchise

Rule and § 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or

affecting interstate commerce", See Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., Inc.,

in Canada Dry Corp. v. Nehi Beverage Co., Inc., the Seventh Circuit held that under the Indiana

franchise act, a franchisee could defend against termination if the franchisor had discriminated

engaged in "arbitrary disparate treatment among similarly situated individuals or entities" (i.e.,

other franchisees), in General Aviation, Inc. v. Cessna Aircraft Co., the Sixth Circuit held that

the anti-discrimination provisions of the Michigan franchise act required a franchisor to offer,

renewal to its franchisees on the same terms that were offered to similarly situated franchisees),

§ 4 of the FTC Act, 15 U.S.C. § 44, § 18(d)(3) of the FTC Act, 15 U.S.C. § 57(a)(d)(3), 16

C.F.R. § 436.1, violations of the Franchise Rule, which constitute unfair and deceptive acts or

practices, in or affecting commerce, in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a), and

Defendant is a franchise, as "franchise" is defined in § 436.2(a) of the Franchise Rule, 16 C.F.R.

§ 436.2(a).

   4.  The amended complaint will define the franchise relationship between franchisee,

Dholakia and franchisor Holiday Inns as evidenced by Holiday Inns is liable for the negligence

of their franchisee, Dholakia. Holiday Inns exercised sufficient "control" over Dholakia, which

led to Plaintiff's allegations that Holiday Inns is vicariously liable for the acts of Dholakia. For

example, Holiday Inns had apparent authority as evidenced by Dholakia's usage of Holiday Inns'

service marks and logos. In the above case, Taylor thought that she was dealing with Holiday Inns. In other words, Taylor relied on Holiday Inns when she made reservations to rent the Derby Meeting Room for her weekly church services at the local hotel. Taylor said to herself that if anything happened to her, she knew she would have the full faith and credit of Holiday Inns behind her. For instance, Taylor was not concerned if the franchisor, Holiday Inns, or a franchisee, Dholakia, operated the local hotel. Therefore, Holiday Inns has substantial legal exposure for the acts of their franchisee, Dholakia. For instance, Holiday Inns must recognize its direct and potential exposure to the said allegations in Plaintiff's complaint and first amended complaint. Taylor claimed that the damages she alleges occurred because of an act or omission by Dholakia is the fault of Holiday Inns. For example, Dholakia's acts was caused by Holiday Inns' direct negligence as evidenced Holiday Inns as franchisor had the duty, but failed to properly train Dholakia as franchisee. Another example is that Holiday Inns is vicariously liable for the act or omission of Dholakia, franchisee. Dholakia as franchisee was an apparent agent of Holiday Inns as franchisor and its allegedly negligent act was caused by its following of the franchisor's required procedures, practices, and polices. For instance, Holiday Inns failed to implement risk management programs and cultural diversity trainings for their employees and their franchisees in order to limit the potential direct liability and vicarious liability claims that are filed in the above case. In this case, vicarious liability arose out of the doctrine of respondeat superior, or "let the master answer." A master is liable for the torts that the servant commits when acting within the scope of his or her employment. Control exercised by the master over the servant seems to provide the rationalization of the master's liability to third persons. Responsibility for harm done by the servant's conduct is imposed to the master when the

controlling aspect causes the harm. The Restatement of Agency § 219 states, "[a] master is subject to liability for the torts of his [her] servants committed while acting in the scope of their employment... or when the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he [she] was aided in accomplishing the tort by existence of the agency relationship." Furthermore, the Restatement of Torts states that: "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other regardless of whether several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury." See Parker et al. v. Dominos Pizza et al., No. 92-2056 and 92-2630 (Fl. App. Ct. 1993). The court found that an actual agency relationship existed between the franchisor, Dominos, and the franchisee through the franchisee agreement and operating manual. See Crinkly v. Holiday Inns, et al., No. 87-1547 (4th Cir. 1988). A motel franchisor was held vicariously liable for injuries sustained by a customer who was assaulted and robbed at the franchisee's hotel. In establishing liability based on apparent agency, the court found that the plaintiff successfully proved that (1) the franchisor represented or permitted itself to be represented as the party dealing directly with the plaintiff and (2) the plaintiff had relied on such representation in dealing with the franchisee. The court ruled that Holiday Inns had failed clearly to distinguish between a franchisor-owned hotel and a franchisee-owned hotel. The franchisor published a national hotel directory listing which, did not distinguish between company owned and franchised properties. Most importantly, the plaintiff relied on the national directory in finding an alternate Holiday Inn when he could not get a room at his first choice, and plaintiff did not deduce the difference when he booked or checked into his room. See Greil v. Travelodge Int'l., Inc., and LaSalle Ohio

Enter., Inc., 541 N.E. 2d 1288 (Ill. App. Ct. 1989). The plaintiff, a paying guest at a franchisee's

motel advertised, designated and operated under the name "Travelodge is the Heart of Chicago,"

filed suit against the franchisor, Travelodge International, Inc., a California Corporation, for

injuries he sustained when he jumped from a second story window in attempt to elude a robber

who entered the plaintiff's room at the motel. The court conducted a dual analysis in its

determination of vicarious liability of the franchisor for intentional torts committed by a third

party. First, the court noted "[u] nder California law, an actual agency exists in a franchise

relationship if the franchisor has imposed controls beyond that necessary to protect its

trademark." In the above styled case, the franchise's agreement and the operating manual

sufficiently involved the franchisor in day-to-day franchisor operation to raise a question of fact

as to the existence of an actual agency. Additionally, under a theory of apparent agency, the

court found that the guest reasonably believed that the franchisee was acting for the franchisor.

"The franchisor and franchisee used a common trademark on signs and cards, employed common

advertising, and had a common telephone listing. There was no evidence indicating that the guest

was informed that the motel was distinct from and independent of the franchisor." *Id.* See Martin

v. McDonald's Corp., 572 N.E. 2d 1073 (Ill. App. 1st Dist. 1991. In this case, breach of the

franchisor's duty to provide security and protection to franchisee's employees by failing to

follow up on security checks of the franchisee to ensure that proper procedures had been

implemented. Furthermore, Dholakia is a franchise of Holiday Inns as evidenced by having the

rights and privileges under the FTC Act and Franchise Rule. For example, Dholakia had become

a franchisee of Holiday Inns as evidenced by buying the right to service, trademark, and logo.

Holiday Inns as the franchisor granted Dholakia the above rights and privileges. A franchise

requires: (a) the use of the seller's trade name or trademark; (b) payment for the use of that trade name or trademark; and (c) an agreement giving the seller certain controls (for example, you must not infer discriminatory intent, you must not make racist statement or reflect evidence of racial steering of African-American and People of Color hotel customers, you must not create evidence of suspicious timing, and you must demonstrate inconsistent behavior when treating African-American and People of Color hotel customers differently than Caucasian hotel customers). Evidently, Holiday Inns failed to train Dholakia thoroughly through training programs (i.e. cultural diversity and sensitivity). Holiday Inns as franchisor and Dholakia as franchisee were both regulated by the Federal Trade Commission and the Uniform Franchise Offering Circular ("UFOC") on the above actions and violations under the FTC Act and Franchise Rule. For example, Dholakia paid an initial franchise fee and a royalty fee and most likely contributed to a pooled advertising marketing program to Holiday Inns. Holiday Inns was in control as evidenced by requiring Dholakia as the franchisee to follow many operating requirements set down by Holiday Inns as the franchisor.

5.     The amended complaint will make a request for permanent injunction against defendants under § 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction against defendants for violations of the FTC Act, as well as other equitable relief, including relief to redress injury results, from violations of the FTC Act. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 44 L. Ed. 2d 295, 96 S.Ct. 1716 (1975).

6.     Under § 19 of the FTC Act, 15 U.S.C. § 57(b), this Court is authorized to grant such relief as the Court finds necessary to redress injury resulting from violations of the Franchise Rule by defendants.

Page 7 of 32

7.      Under §§ 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), this Court is authorized to award civil penalties of not more than $11,000 for each violation of the Franchise Rule. The defendants' violations of the Rule were committed with the knowledge required by § 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

8.      Defendants will cause consumer injury in Shelbyville, Kentucky and throughout the United States of America. On information and belief, consumers in the United States will suffer substantiated mental anguish, emotional distress, and humiliation as a result of defendants' unlawful acts and discriminatory practices. See Winter v. Natural Resource Defense Council, Inc., _U.S._, 129 S.Ct. 365, 374 (2008), Dataphase Sys., Inc. v. CI. Sys. Inc., 640 F.2d 109, 113 (8th Cir. 1981) and Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006).

9.      Absent injunctive relief by this Court, defendants are likely to injure consumers and harm the public interest.

10.     This Court has authority to grant relief. Defendants have engaged in the acts and practices described above in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a).

11.     Defendants have engaged in the acts and practices described above in violation of the Franchise Rule 16 C.F.R. Part 436.

12.     This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury, caused by the defendants' violations of the FTC Act and the Franchise Rule.

13.     Pursuant to FRCP 65(a)(1)(2), plaintiff notified defendants of her request for permanent injunction. A copy of Notice to defendants is attached hereto and labeled Exhibit "2."

14.     WHEREFORE, plaintiff requests that this Court, as authorized by §§ 5(a)(1), 5(m)(1)(A), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 57(b),

and pursuant to its own equitable power:

(a) Award plaintiff such preliminary injunctive and ancillary relief as maybe necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief;

(b) Enter judgment against defendants and in favor of plaintiff for each and every violation alleged in this complaint;

(c) Permanently enjoin the defendants from violating the FTC Act, as alleged herein, in connection with discriminatory practices against African-Americans and other People of Color and in connection with treating African-American and other People of Color hotel customers differently than similarly situated Caucasians hotel customers;

(d) Permanently enjoin defendants from violating the Franchise Rule, as alleged herein, in connection with engaging in arbitrary disparate treatment among similarly situated hotel customers;

(e) Award plaintiff monetary civil penalties for every violation of the Franchise Rule;

(f) Find the defendants liable and award such relief as the Court finds necessary to redress injury to consumers resulting from defendants' violations of § 5 of the FTC Act and of the Franchise Rule, including but not limited, to mental anguish, emotional distress, and humiliation compensations;

(g) Award plaintiff the costs of bring this action, as well as such other and additional relief as the Court may determine to be just and proper.

15. The amended complaint will add nine (9) additional claims of action upon, which relief can be granted and will not cause any prejudice states the following:

## COMPLAINT FOR:

16.    Intentional Race Discrimination[1]

17.    Negligent Infliction of Emotional Distress[2]

18.    Breach of Fiduciary Duty, Duty of Loyalty, and Duty of Due Care[3]

19.    *Res Ipsa Loquitur* and Respondeat Superior[4]

20.    Negligent Hiring, Retention, and Training[5]

21.    Negligent Supervision[6]

22.    Retaliation[7]

23.    Conspiracy[8]

24.    Breach of Implied Covenant of Good Faith and Fair Dealing[9]

---

[1] See McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273 (1976); Title 42 U.S.C. § 1981(a)(3).

[2] See Viehweg v. Vic Tanny Intern of Missouri, Inc., 732 S.W. 2d 212, 213 (Mo. App. 1987).

[3] See Dominquez v. Brackey Enterprises, Inc., 756 S.W. 2d 788 (Tex. Ct. App. 1988), *writ of error denied*; Title 28 of the United States Code § 1367 (1990).

[4] See McCauley v. Ray, 80 N.M. 171, 180, 453 P.2d 192 (1968); Sutton v. Chevron Oil Company, 85 N.M., 679, 515 P.2d 1283 (1973).

[5] In reference to Holiday Inns' as franchisor current employees and franchisee, Jaydev Nilmani Dholakia.

[6] In reference to Holiday Inns' as franchisor current franchisee Dholakia and franchisees' employees.

[7] See Foley v. Univ. of Houston Sys., 355 F.3d 333, 341 (5th Cir. 2003).

[8] See Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 778 (D.C. Cir. 1984).

[9] See Sutherland v. Barclays American/Mortgage Corp., 53 Cal. App. 4th 299, 314, 61 Cal. Rptr. 2d 614 (1997).

## THIRD CAUSE OF ACTION FOR
## INTENTIONAL RACE DISCRIMINATION

36.     All the foregoing paragraphs of the Complaint are incorporated herein and made a part hereof as if again set forth in full.

37.     Defendants' willfully and intentionally cancelled Taylor's meeting room reservations and denied her any future reservations at the local hotel solely based on her race, African-American and they denied Taylor the same terms and conditions as those afforded to similarly situated Caucasian hotel customers.

38.     Defendants' willfully and intentionally made an unfair choice to deny Taylor's church from using the Derby meeting room long-term for their weekly religious services solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

39.     Defendants' willfully and intentionally decided that only Caucasian hotel customers would be able to rent the Derby meeting room long-term and for continual usage. Defendants' choice bear no relation to objective criteria for the meeting room rental, Taylor had been differentiated and was not allowed to rent the meeting room ongoing per her request to do so as evidenced by Defendants intentionally failing to document her reservation requests solely based on her race, African-American.

40.     Defendants' willfully and intentionally applied different hotel rules, standards, and polices for to Taylor to follow at the local hotel solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

41.     Defendants' willfully and intentionally caused an impairment of Taylor's human

dignity, which is Taylor's fundamental constitutional right to practice religion and to be free of unequal treatment solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

42.     Defendants' willfully and intentionally treated Taylor disrespectfully, unfairly, dishonestly, and without disregard of her requests for long-term and continual usage of the Derby meeting room for her weekly religious services solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

43.     Defendants' willfully and intentionally failed to provide rational, valid, and justifiable reasons for denying Taylor long-term and continual usage of the Derby meeting for her weekly religious services solely based on her race, African-American, instead of providing equal rights and privileges shared by other similarly situated Caucasian hotel customers.

44.     Defendants' willfully and intentionally perpetuated systemic disadvantages on Taylor causing her parishioners not to have a place to worship of their own as evidenced by the denial of long-term and continual usage of the Derby meeting for weekly religious services solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

45.     Defendants' willfully and intentionally undermined Taylor's human dignity as evidenced by defendants adversely affected the equal enjoyment of Taylor's rights and freedom in a serious manner that is comparable to discriminate against her solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

46.     Defendants' willfully and intentionally treated Taylor differently as compared to other Caucasian hotel customers solely based on her race, African-American and that her dignity as a human being was impaired by such treatment, instead they treated her differently from other similarly situated Caucasian hotel customers.

47.     Defendants' willfully and intentionally imposed burdens on Taylor and withheld benefits and opportunities to utilize local hotel from Taylor solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

48.     Defendants' willfully and intentionally misrepresented the price for the Derby meeting room for $50.00 for only four hours per day that the same hotel service is sold at $50.00 for the whole day by local competitors solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

49.     Defendants' willfully and intentionally used coercive tactics as evidenced by refusing to allow Taylor and her parishioners to drink water and eat snacks in the Derby meeting room solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

50.     Defendants' willfully and intentionally used high pressure sales tactics as evidenced by telling Taylor that she needed to pay for their catering services in order to eat in the hotel solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers.

51.     Defendants' willfully and intentionally engaged in illegal, immoral, unethical, oppressive, and unscrupulous conduct as evidenced by causing Taylor harm and treating her

Page 13 of 32

differently from other similarly situated Caucasian hotel customers solely based on her race,
African-American.

52.     Defendants' willfully and intentionally took advantage of Taylor's vulnerability
and knew or should had known that her church relied on the Derby meeting room to hold their
weekly religious services solely based on her race, African-American, instead they treated her
differently from other similarly situated Caucasian hotel customers. For example, Taylor's
church has had previously utilized that same Derby meeting room under Holiday Inns' different
franchisee without any discriminations unlike Holiday Inns' current franchisee at the local hotel.
Another example is that Taylor and her parishioners were allowed to drink water and eat snacks
in the Derby meeting room under Holiday Inns' former franchisee without hesitation.

53.     Defendants' willfully and intentionally denied Taylor future access to the Derby
meeting room solely based on her race, African-American, instead they treated her differently
from other similarly situated Caucasian hotel customers.

54.     Defendants' willfully and intentionally victimized Taylor through deceptive trade
and service practices as evidenced by Dholakia's unconscious discriminatory practices and racial
comment solely based on her race, African-American, instead they treated her differently from
other similarly situated Caucasian hotel customers.

55.     Defendants' willfully and intentionally caused a breach for interference with
economic advantage solely based on her race, African-American as evidenced by one of the
franchisee's current employees intentionally sneaked in and told Taylor that she could keep and
store her church equipment such as piano, drums, speakers, and sound system at the local hotel.
Taylor relied on franchisee current employee's message; instead, they treated her differently

from other similarly situated Caucasian hotel customers.

56.     Defendants' actions were willfully and intentionally in violation of the
Title 42 U.S.C. § 1981(a)(b)(c), Title 42 U.S.C. § 1981(a)(b)(1), Federal Tort Claims Act
("FTCA") of 1946, the Civil Rights Act of 1866, the Civil Rights Restoration Act of 1988,
Title 18 U.S.C. § 242, Third, Fourth, and Ninth Amendments, Title 42 U.S.C. §§ 12203, 12117,
12133, and 12188, the Restatement of Agency ("ROA") § 219, ROA (Second) § 219(1) (1957),
ROA (Third) Liability of Principle of Third Persons § 219 (2000), the Federal Trade
Commission ("FTC" or "the Commission") § 16(a)(1) of the Federal Trade Commission Act
("FTC Act"), 15 U.S.C. § 56(a)(1), §§ 5(a)(1), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act,
15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a), and 57(b), § 5 of the FTC Act, 15 U.S.C. §
45(a), the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions
Concerning Franchising and Business Opportunity Ventures" ("the Franchise Rule") 2007(a) pp.
15544-15575, § 4 of the FTC Act, 15 U.S.C. § 44, § 18(d)(3) of the FTC Act, 15 U.S.C. §
57(a)(d)(3), 16 C.F.R. § 436.1, § 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Defendant is a
franchise, as "franchise" is defined in § 436.2(a) of the Franchise Rule, 16 C.F.R. § 436.2(a).

57.     Defendants' actions were willful, intentional, and done with reckless indifference
disregard of Taylor's civil rights, freedoms of fair and equal treatment, and liberties under the
United States Constitution. Defendants' simply did not care and blatantly disregarded Taylor's
civil rights, freedoms of fair and equal treatment, and liberties under the United States
Constitution.

## FOURTH CAUSE OF ACTION FOR
## NEGLIGENT INFLICTION OF
## EMOTIONAL DISTRESS

58.     All the foregoing paragraphs of the Complaint are incorporated herein and made a

part hereof as if again set forth in full.

59.     Defendants' discriminatory conduct and unfair and deceptive practices caused

Taylor to suffer serious emotional distress.

60.     The Defendants negligently, willfully, and intentionally interfered with Taylor's

civil rights, freedoms of fair and equal treatment, and liberties under

Title 42 U.S.C. § 1981(a)(b)(c), Title 42 U.S.C. § 1981(a)(b)(1), Federal Tort Claims Act

("FTCA") of 1946, the Civil Rights Act of 1866, the Civil Rights Restoration Act of 1988,

Title 18 U.S.C. § 242, Third, Fourth, and Ninth Amendments, Title 42 U.S.C. §§ 12203, 12117,

12133, and 12188, the Restatement of Agency ("ROA") § 219, ROA (Second) § 219(1) (1957),

ROA (Third) Liability of Principle of Third Persons § 219 (2000), the Federal Trade

Commission ("FTC" or "the Commission") § 16(a)(1) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 56(a)(1), §§ 5(a)(1), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act,

15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a), and 57(b), § 5 of the FTC Act, 15 U.S.C. §

45(a), the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions

Concerning Franchising and Business Opportunity Ventures" ("the Franchise Rule") 2007(a) pp.

15544-15575, § 4 of the FTC Act, 15 U.S.C. § 44, § 18(d)(3) of the FTC Act, 15 U.S.C. §

57(a)(d)(3), 16 C.F.R. § 436.1, § 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Defendant is a

franchise, as "franchise" is defined in § 436.2(a) of the Franchise Rule, 16 C.F.R. § 436.2(a).

61.     The Defendants' negligently, willfully, and intentionally cancelled Taylor's

meeting room reservations and denied her any future reservations at the local hotel solely based on her race, African-American and they denied Taylor the same terms and conditions as those afforded to similarly situated Caucasian hotel customers.

62. The Defendants' negligently, willfully, and intentionally imposed different terms and conditions and treated Taylor differently than other similarly situated Caucasian hotel customers.

63. The Defendants intended to and did inflict severe emotional distress upon Taylor by engaging in actions that intended to harass, belittle, confuse, mislead, and threaten Taylor, the purpose of which was to intimidate and coerce Taylor in taking her parishioners and weekly religious services to another hotel, outside of Holiday Inns.

64. The Defendants attempted to take advantage of Taylor reasonable unable to find another hotel in a short period, unable to contact parishioners in the community, unable to protect her interest because of an assumed ignorance and an inability to understand the legal issues and factors involved, and therefore acted with unconscionable intent.

65. The actions of Holiday Inns, acting by and through its franchisee, franchisees' employees, agents, affiliates, and employees, acted with the intent to cause, or with reckless disregard for the probability of causing Taylor to suffer emotional distress, shame, anxiety, and shock.

66. The Defendants are liable to Taylor for compensatory damages arising from severe emotional distress, in an amount to be determined by a jury.

67. As a direct of the Defendants' failure Taylor has suffered from lasting embarrassment, humiliation, and mental anguish.

### FIFTH CAUSE OF ACTION FOR
### BREACH OF FIDUCIARY DUTY, DUTY OF LOYALTY
### DUTY OF DUE CARE

68.     All the foregoing paragraphs of the Complaint are incorporated herein and made a part hereof as if again set forth in full.

69.     Plaintiff established a fiduciary relationship with Holiday Inns when she made reservations for long-term and continual usage of the Derby meeting room for her weekly religious services and paid $50.00 for four hours usage. See Complaint ("Compl.") Section Facts ¶ 8.

70.     Plaintiff justifiably reposed trust and confidence in Holiday Inns to act in her interest, where they provided a hotel service under regulations of the FCT.

71.     Plaintiff relied on Holiday Inns' trademark, franchise agreement, and business practices by placing her confidence in them with the belief that they will act in her best interest.

72.     Where Holiday Inns is a fiduciary regulated under the FCT, which is subjected to a number of fiduciary duties owed to Plaintiff.

73.     Holiday Inns owed Plaintiff duties of loyalty, a duty of maintaining accurate reservation records and payments, a duty of due care, and a duty to maintain Plaintiff's confidences.

74.     Holiday Inns failed their duty of loyalty, duty of maintaining accurate reservation records and payments, duty of due care, and duty of maintaining Plaintiff's confidences owed to Plaintiff.

75.     Holiday Inns failed to act solely for the benefit of Plaintiff to whom the duty is owed with respect to all matters within the scope of the fiduciary relationship.

76.     Holiday Inns failed to honor Plaintiff's request for long-term and continual usage of the Derby meeting room for her weekly religious services and canceled her reservations without notice.

77.     Holiday Inns failed to inform Plaintiff that they had denied her long-term and continual usage of the Derby meeting room prior to her showing up for her weekly religious services. See Compl. Section First Cause of Action for Breach of Contract ¶ 17.

78.     Holiday Inns secretly failed to share about their choice to deny Plaintiff long-term and continual hotel services with Plaintiff.

79.     Holiday Inns failed to disclose relevant facts about Plaintiff's reservation and went against Plaintiff's request for long-term and continual usage of the Derby meeting room for her weekly religious services.

80.     Holiday Inns failed to keep accurate records of Plaintiff's reservations and overcharging Plaintiff's credit card an extra $2.00 without her permission or knowledge.

81.     Holiday Inns failed to hold a professional standard of care owed to Plaintiff as evident by not acting in the best interest of the Plaintiff.

82.     Holiday Inns failed to maintain Plaintiff's confidences as evident by refusing to honor franchisee's employee promise for Plaintiff to leave and store her church equipment such as piano, drums, speakers, and sound system in a secured location at the local hotel.

83.     A fiduciary relationship existed between the Plaintiff and Holiday Inns when they breached their fiduciary duty owed to Plaintiff whom she placed her complete confidence and trust in Holiday Inns to refrain from unfair and deceptive practices.

84.     Holiday Inns acted in a manner adverse to the interest of the Plaintiff as evident

by canceling her reservations and denying her long-term and continual usage of the Derby meeting room for her weekly religious services solely based on her race, African-American and denying her the same terms and conditions as those afforded to other similarly situated Caucasian hotel customers.

85. Holiday Inns acted in their benefit in relation to the said matter as evident by not wanting to rent the Derby meeting room to African-American or People of Color hotel customers for long-term or continual usage and violating the Franchise Rule for fair and equal treatment for all hotel customers.

86. Holiday Inns failed to act loyal to the Plaintiff as evident by putting their personal interest before the duty owed to Plaintiff.

87. Holiday Inns profited their position as a fiduciary without the consent of the Plaintiff as evident by canceling her reservations for long-term and continual usage of the Derby meeting room solely based on her race, African-American, instead they treated her differently from other similarly situated Caucasian hotel customers in violation of Title 42 U.S.C. § 1981(a)(b)(c), § 5 of the FTC Act, and 15 U.S.C. § 45(a).

88. Holiday Inns failed to provide the Plaintiff with the best efforts of the fiduciary relationship on her behalf.

89. Holiday Inns failed to exercise all of the skill, care, and diligence of their disposal when they acted on behalf of the Plaintiff.

90. Holiday Inns failed to make truthful and complete disclosure to the Plaintiff whom put her trust in them as evident by failing to tell her that they had cancelled her reservations and denied her earlier reservations for long-term and continual usage of the Derby

meeting room for her weekly religious services.

91.    Holiday Inns took an unreasonable advantage of their choice by denying the Plaintiff future hotel services and making decisions not in the best interest of the Plaintiff solely based on her race, African-Americans, instead they treated her differently from other similarly situated Caucasian hotel customers.

92.    Plaintiff had placed her confidence in Holiday Inns to act in her best interest, which she relied on their trademark and reservations made for long-term and continual usage of the Derby meeting room for her weekly religious services at the local hotel.

93.    Holiday Inns' conduct was outrageous, plain evil and reckless disregard of the Plaintiff's rights and liberties.

94.    As a direct result of Holiday Inns' conduct, the Plaintiff suffered harm by their breach of duty owed to the Plaintiff.

95.    Holiday Inns is liable for punitive, prejudgment, and compensatory damages for breaching its fiduciary duty owed to the Plaintiff and the breach is the proximate cause of damage to the Plaintiff.

## SIXTH CAUSE OF ACTION FOR
## *RES IPSA LOQUITUR* AND RESPONDEAT SUPERIOR

96.    All the foregoing paragraphs of the Complaint are incorporated herein and made a part hereof as if again set forth in full.

97.    Holiday Inns' liability on the part of its franchisee and franchisee's employees was apparently premised on their derivative responsibility for the acts and omissions of their managing hotel under the Franchise Rule.

98.    Holiday Inns' franchisee and franchisee's employees caused unfair, deceptive,

and injury to the Plaintiff when they deprived her long-term and continual usage of the Derby meeting room for her weekly religious services and storage area for her church equipment such as piano, drums, speakers, and sound system as they promised to do so. For example, Holiday Inns' franchisee and franchisee's employees failed to act reasonably and fairly under the circumstances outlined and violated the standard of care and prudent hotel franchise in the same or similar conditions would have followed.

99.     The Plaintiff alleges that there was a master-servant relationship[10] between Holiday Inns and its franchisee and franchisee's employees. "A master is under a duty to exercise reasonable care so to control his or [her] servant while acting outside the scope of his [her] employment as to prevent him [her] from intentionally harming others or from so conducting himself [herself] as to create an [unfair and] unreasonable risk of bodily harm." The duties breached by Holiday Inns' franchisee and franchisee's employees including duties arising by law out of the fiduciary duty relationship, as well as duties created by representations of Holiday Inns' franchisee and franchisee's employees that they would take action to solve the problem created by discriminatory practices, but there was no results. As a result of Holiday Inns' franchisee and franchisee's employees' negligence, unfair, and deceptive practices, they caused the Plaintiff to suffer severe mental anguish and emotional distress, anxiety, and stress on her physical body and highly increased her blood pressure.

100.    At all times Holiday Inns' franchisee and franchisee's employees were acting within the scope of his or her position. As franchisor, they failed to take some action against

Page 22 of 32

---

[10] The doctrine of respondeat superior, is premised upon derivative liability and is summarized in § 317 of the Restatement (Second) of Torts; See also Id. Agency § 213.

Jaydev Nilmani Dholakia and franchisee's employees for their disparate treatment of the

Plaintiff solely based on her race, African-American in violation of Title 42 of the United States

Code ("U.S.C.") § 1981(a)(b)(c), § 5 of the FTC Act, and 15 U.S.C. § 45(a).

101. As a direct result of Holiday Inns' franchisee and franchisee's employees'

negligence, unfair, and deceptive practices, the Plaintiff suffered lasting and future mental and

physical injury.

## SEVENTH CAUSE OF ACTION FOR
## NEGLIGENT HIRING, RETENTION, AND TRAINING

102. All the foregoing paragraphs of the Complaint are incorporated herein and made a

part hereof as if again set forth in full.

103. Holiday Inns franchisee Jaydev Nilmani Dholakia was contracted under a

franchise agreement and the Franchise Rule as general manager. Apparently, Dholakia was unfit

in his role as franchisee and general manager with a lack of training in cultural diversity and

sensitivity, a lack of communication skills with hotel customers of a different race and culture

than his, and a lack of respect, fairness, integrity, and tactfulness with African-American hotel

customers as evident by Plaintiff's firsthand knowledge in the manner Dholakia treated her

differently than other similarly situated Caucasian hotel customers.

104. Holiday Inns knew or should have known that Dholakia was unfit for that

contractual relationship and position they contracted with and put him in with a lack of training

in cultural diversity and sensitivity, a lack of communication skills with hotel customers of a

different race and culture than his, and a lack of respect, fairness, integrity, and tactfulness with

African-American hotel customers as evident by canceling out Plaintiff's reservations without

her knowledge or consent and denying her long-term and continual usage of the Derby meeting

room for her weekly religious services, instead treating her differently than other similarly situated Caucasian hotel customers. Dholakia appeared to be uncomfortable in working with African-American hotel customers in his role as franchisee and general manager as evident by his racial comment. See Compl. Section Second Cause of Action for Racial Discrimination ¶ 29. And Holiday Inns knew that, but they wanted to contract with only non-African-American franchisees to fill the franchisee and general manager position at the local hotel.

105.    Holiday Inns could foresee that Dholakia through his lack of training in cultural diversity and sensitivity, lack of communication skills with hotel customers of a different race and culture than his, and lack of respect, fairness, integrity, and tactfulness with African-American hotel customers would come into contact with the Plaintiff when she previously made reservations for long-term and continual usage of the Derby meeting room for her weekly religious services, instead Dholakia canceled her reservations without her knowledge or consent, nor did Dholakia inform the Plaintiff of his decision and denied her future long-term and continual usage of the Derby meeting because he unconsciously did not trust African-American hotel customers.

106.    As direct and proximate result of Holiday Inns' negligence, unfair and deceptive practices, caused the Plaintiff's injury, depriving her the same rights, terms, and conditions of similarly situated Caucasian hotel customers, interfering with her right to rent the Derby meeting room for long-term and continual usage for religious purposes, and failing to inform her of reasons for deny of rental accommodations prior to her showing up on the day of her booked reservations; causing her to suffer severe mental anguish, emotional distress, stress, embarrassment, and humiliation, and causing her and her parishioners not having a place to

Page 24 of 32

worship in their own space.

107.     Holiday Inns owed the Plaintiff a duty of care from their franchisee and

franchisee employees' discriminatory, unfair, and deceptive practices, from the untrained in

dealing with other races and cultures, inexperienced with African-American hotel customers, and

an unfit franchisee that lacks cultural sensitivity who Holiday Inns foresaw the Plaintiff could be

harmed by an unfit franchisee. At that point, Holiday Inns breached its duty of care and failed to

use reasonable care under the circumstances presented. Because of the breach, the Plaintiff has

suffered greatly by the injury. Holiday Inns knew that Dholakia was not fit as a franchisee and

general manager, who lacks cultural sensitivity, but retained him in his contractual relationship

and in that position.

## EIGHTH CAUSE OF ACTION FOR
## NEGLIGENT SUPERVISION

108.     All the foregoing paragraphs of the Complaint are incorporated herein and made a

part hereof as if again set forth in full.

109.     Jaydev Nilmani Dholakia is a current franchisee and contractual agent for Holiday

Inns to the extent that Dholakia is authorized to use its trademark and logo and act for Holiday

Inns and is partially entrusted with Holiday Inns' business through a contractual relationship

under the franchise agreement and the Franchise Rule. Even though, Holiday Inns controls, or

has a right to control, the time, place, and method of doing work. In addition, there is a

contractual, principle, and agent relationship between Dholakia and Holiday Inns.

110.     In Dholakia's roles as franchisee and general manager, Dholakia failed to

properly train, supervise, and counsel John Doe (franchisee's employee name unknown who

physically lives at the local hotel) who engaged in such conduct as evident by giving the Plaintiff

permission to store her church equipment such as piano, drums, speakers, and sound system in a storage area and using deceptive sale tactics to charge her $100.00 for four hours for usage of the lobby area for her weekly religious services; and by failing to effectively train franchisee's employees in fair and equal dealing business practices, risk management, and cultural diversity and concerning a special duty of care owed to the Plaintiff.

111. Dholakia also lacks cultural sensitivity, fair and equal business skills and practices, and integrity and is not fit to work with African-American and People of Color hotel customers as evident by misusing power and authority to cancel Plaintiff's reservation without her knowledge or consent and deny her future use of the local hotel.

112. Dholakia, along with the others knew or should have known that John Doe (franchisee's employee name unknown who physically lives at the local hotel) was unfit and unsuitable for employment as a hotel clerk and he lacks risk management, fair and equal dealing in business practices, and cultural diversity trainings as evident by attempting to charge African-American hotel customers higher rates for meeting room rentals than similarly situated Caucasian hotel customers.

113. Dholakia, along with others knew or should have known that the unsuitableness and unfitness of John Doe (franchisee's employee name unknown who physically lives at the local hotel) for employment as a hotel desk clerk due to his lack of skills in fair and equal dealing in practices, risk management, and cultural sensitivity in working with hotel customers who are racially different than he is could and did create an unreasonable risk of harm for the Plaintiff and other African-American hotel customers.

Page 26 of 32

114.    As a direct and proximate result of Dholakia, along with others' negligent hiring John Doe (franchisee's employee name unknown who physically lives at the local hotel), the Plaintiff has suffered mental anguish and severe emotional distress, shame, and humiliation.

115.    Dholakia had a duty to supervise John Doe (franchisee's employee name unknown who physically lives at the local hotel) and not cover up the promise John Doe made to store her church equipment such as piano, drums, speakers, and sound system in a storage area in the local hotel and was acting in the scope of his franchise contractual relationship and employment of Holiday Inns under the franchise agreement and the Franchise Rule.

## NINTH CAUSE OF ACTION FOR
## RETALIATION

116.    All the foregoing paragraphs of the Complaint are incorporated herein and made a part hereof as if again set forth in full.

117.    When Plaintiff reminded John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment such as the piano, drums, speakers, and sound system in a secured storage area in the local hotel, Dholakia retaliated against Plaintiff solely basis on her race, African-American as evidenced by secretly canceling her hotel reservations for long-term and continual usage of the Derby meeting room for her weekly religious services.

118.    To prevail for the claim of retaliation, Plaintiff has proved all of the following by a preponderance of the evidence. Dholakia illegally cancelled plaintiff hotel reservations booked for long-term and continual usage of the Derby meeting room for her weekly religious services. When Plaintiff reminded John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment, Dholakia

retaliated against Plaintiff as evidenced by secretly canceling her hotel reservations and denying her long-term and continual usage of the Derby meeting room for her weekly religious services. Plaintiff was subjected to a materially adverse action at the time, and after the protected conduct took place. There was a causal connection between applying higher hotel standards and solely because of Taylor's race, African-American. Holiday Inns intentionally chose not to follow the hotel policies for all hotel customers alike.

119.    Concerning the first element, Plaintiff needs not prove the merits of her reminding John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment, but only that she was acting under a good faith belief that Plaintiff's right to be free from racial discrimination was violated.

120.    Concerning the second element, the term "materially adverse" means that Plaintiff must show Dholakia retaliated against Plaintiff for reminding John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment when he secretly cancelled her booked reservations and denied her long-term and continual usage of the Derby meeting room for her weekly religious services, caused her and her parishioners not having a place of their own to worship, and Plaintiff not to have time earlier enough to inform her parishioners of cancellation of booked reservations solely because of Plaintiff's race, African-American, was serious enough that it well might have had discouraged a reasonable hotel customer from doing business with the said local hotel.

121.    Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is sufficient connection through timing, that is Dholakia and John Doe (franchisee's employee name unknown who

Page 28 of 32

physically lives at the local hotel)'s actions followed shortly after Dholakia and John Doe became aware of Plaintiff's retaliation and racial discrimination. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Plaintiff or a change in demeanor toward Plaintiff. Ultimately, you must decide whether Plaintiff's race, African-American had a determinative effect on Dholakia retaliating against Plaintiff for reminding John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment when he secretly canceled her booked reservations and denied her long-term and continual usage of the Derby meeting room for her weekly religious services, caused her and her parishioners not having a place of their own to worship, and caused Plaintiff not to have time earlier enough to inform her parishioners of cancellation of booked reservations. "Determinative effect" means that if not for Plaintiff's race, African-American, Dholakia's retaliating against Plaintiff for for reminding John Doe (franchisee's employee name unknown who physically lives at the local hotel) about the promise he made for her to store her church equipment would not have occurred.

122.    Before the jury, Plaintiff must persuade the jury that the Defendants' stated reason was merely pretext for race discrimination, or in some other way prove it is more likely than not that race motivated the local hotel. Plaintiff retains the ultimate burden of persuading the jury of intentional discrimination. The fact finder's rejection of the local hotel's proffered reason allows, but does not compel, judgment for the plaintiff.

123.    As a direct of Holiday Inns' conduct, Plaintiff has suffered harm, mental anguish, and emotional distress by their retaliation.

Page 29 of 32

## TENTH CAUSE OF ACTION FOR
## CONSPIRACY

124.    All the foregoing paragraphs of the Complaint are incorporated herein and made a

part hereof as if again set forth in full.

125.    When both Dholakia and John Doe (franchisee's employee name unknown who

physically lives at the local hotel) conspired to cancel Plaintiff's booked reservations and deny

long-term and continued usage of the Derby meeting room for her weekly religious services,

Dholakia and John Doe caused Plaintiff and they did accomplish their task of no future usage of

the local hotel.

126.    John Doe (franchisee's employee name unknown who physically lives at the local

hotel) joined the conspiracy with Dholakia to cause Plaintiff harm and knew they were applying

higher hotel standards and rules to Plaintiff solely basis on her race, African-American than the

other similarly situated Caucasian hotel customers. John Doe intended to help Dholakia

accomplish his goal of causing Plaintiff to have nowhere to hold her weekly religious services

without prior notice.

127.    Dholakia and John Doe (franchisee's employee name unknown who physically

lives at the local hotel) violated Holiday Inns' franchise agreement and the Franchise Rule,

Title 42 U.S.C. § 1981(a)(b)(c), § 5 of the FTC Act, and 15 U.S.C. § 45(a), Plaintiff's civil

rights, equal protections, and liberties as outlined under the U.S. Constitution.

## ELEVENTH CAUSE OF ACTION FOR
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING

128.    All the foregoing paragraphs of the Complaint are incorporated herein and made a

part hereof as if again set forth in full.

129.    Holiday Inns deprived Taylor of the benefits, enjoyments, and privileges under their implied contact solely basis on her race, African-American, instead treated Taylor differently than other similarly situated Caucasian hotel customers. See Compl. Section First Cause of Action for Breach of Contract ¶¶ 12-24.

130.    Holiday Inns breached their implied contract as evidenced by failing to deal fairly or in good faith giving rise to alleged claims in the Compl. and First Amended Compl. for damages.

131.    Holiday Inns failed to refrain from unfair dealings and deceptive sale tactics and unequal treatment solely basis on Taylor's race, African-American, instead treated Taylor differently than other similarly situated Caucasian hotel customers.

132.    Holiday Inns interfered with Taylor's rights for equal protection to rent the Derby meeting room for long-term and continued usage for her weekly religious services when they canceled her booked reservations without her knowledge and without warning and denied her future usage of the local hotel solely basis on her race, African-American, instead treated Taylor differently than other similarly situated Caucasian hotel customers.

133.    As a result of Holiday Inns' breach of implied covenant of good faith and fair dealing, Holiday Inns is liable for all damages proximately resulting from their conduct causing Taylor to suffer severe mental anguish, emotional distress, and lasting humiliation.


**DATED:**      May 17, 2013                    Respectfully submitted,

                                                Antoinette C. Taylor, Plaintiff in *Pro Se*
                                                1082 Dotland Circle
                                                Shelbyville, Kentucky 40065
                                                502.437.5375
                        Page 31 of 32

CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by regular U.S. Mail on this _____2 ○ t h_____ day of ___M a y_____, 2013, to the following:

Registered Agent of Holiday Inns Incorporated d/b/a
InterContinental Hotels Group (IHG)
Linda Banks, Representative
Corporation Process Company
2180 Satellite Boulevard, Suite 400
Duluth, Georgia 30097

Registered Agent of Jaydev Nilmani Dholakia d/b/a Dhol Enterprises, LLC and
Holiday Inn Express Hotel & Suites
Usha J. Dholakia, Representative
419 Landis Lakes Court
Louisville, Kentucky 40245